IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JULIE A. SU, *Acting Secretary of the*<br>*U.S. Department of Labor*, | § | |
| | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | 1:23-CV-1147-RP |
| | § | |
| CATCUS CANYON QUARRIES, INC. and<br>JACK ANDY CARSON, | § | |
| | § | |
| | § | |
| Defendants/Counter-Plaintiffs. | § | |

## <u>ORDER</u>

Before the Court is Plaintiff Julie A. Su, Acting Secretary of the U.S. Department of Labor's,

("DOL") motion for a preliminary injunction, (Dkt. 3); Defendant Cactus Canyon Quarries, Inc.

("Cactus Canyon") and Jack Andy Carson's ("Carson") (collectively, "Defendants") motion to

dismiss, (Dkt. 10); Defendants' motion to exclude, (Dkt. 15); and DOL's motion to dismiss

Defendants' counterclaim, (Dkt. 13). The Court held a hearing on the motion for a preliminary

injunction on November 14, 2023. (Dkt. 17). Having considered the parties' arguments, the evidence

presented, and the relevant law, the Court will grant DOL's application for a preliminary injunction,

deny Defendants' motion to dismiss and motion to exclude, moot DOL's motion to dismiss, and

dismiss Defendants' amended counterclaim.

## I. BACKGROUND

Carson is the President of Cactus Canyon, which runs a surface plant in Marble Falls, Texas

("the Fairfield Plant"). (Compl., Dkt. 1, at 1). DOL contends that the Fairfield Plant is a surface

mine under Section 3(h)(1) of the Mine Act, 30 U.S.C. § 802(h)(1). (*Id.* at 1-2). Under the Mine Act,

inspectors for the Mining Safety and Health Administration, ("MSHA"), a branch of DOL, must

conduct in-person inspections of surface mines at least twice per year. 30 U.S.C. § 813(a). MSHA

cannot provide advance notice of these inspections. *Id.*; 30 U.S.C. § 820(e). The statute grants "a right of entry to, upon, or through any coal or other mine." *Id.* § 813(a). Defendants contend that the Fairfield Plant has ceased all mining operations and should therefore no longer be classified as a "mine" or subject to inspection under the Mine Act. (Mot. Dismiss, Dkt. 10, at 2).

According to DOL, the Fairfield Plant has been classified as an active mine for at least 25 years, and MSHA inspectors have conducted inspections of the site twice a year since 1997. (O'Dell Testimony, Dkt. 17). In 2013, however, Defendants took ownership of the mine and began to contest whether the agency should be allowed to inspect the site. Carson, who is also a licensed attorney, has regularly appealed fines issued to him by MSHA inspectors to the Federal Mine Safety and Health Review Commission ("FMSHRC"). One such petition, which began in 2021, specifically challenged whether the Fairfield Plant was still engaged in "milling" that would qualify it as a mine for purposes of the Mine Act. (Manning Op., Dkt. 1-3, at 1–2). On May 24, 2023, Administrative Law Judge Richard W. Manning issued an order and opinion finding that the Fairfield Plant *did* qualify as a surface mine and upheld $375 worth of fines that MSHA inspectors had issued under Mine Act regulations. (*Id.*). The FMSHRC has agreed to review the ALJ's decision, although it has not stayed, vacated, or otherwise amended the order. *See* 30 U.S.C. § 823; 29 C.F.R. 2700.00.

In the first half of 2023, MSHA conducted its first biannual inspection of the Fairfield Plant. (O'Dell Testimony, Dkt. 17). According to the MSHA Division Manager, William O'Dell, Carson has been "verbally aggressive" towards inspectors during past visits. (O'Dell Decl., Dkt. 3-1, at 2–3). Because of this behavior, staff at DOL began communicating with Carson about ensuring a smooth second inspection of the Fairfield Plant in 2023. (O'Dell Decl., Dkt. 3-1, at 2). However, on September 7, Carson sent a letter to MSHA threatening to deny entry to any MSHA inspectors. (Carson Letter, Dkt. 3-2, at 2). The letter denies that the Fairfield Plant is a mine and concludes that MSHA therefore has no authority to inspect the site. (*Id.*). The letterhead states, "MSHA Treated as

2

Trespasser" and it closes with the line, "Please do not harass and threaten employees of the Fairfield Plant by sending an inspector to test our resolve in treating the inspector as a trespasser." (*Id.*). O'Dell contends that the letter represents a threat to MSHA inspectors, and that he cannot safely send inspectors to the site in light of these intimidating statements. (O'Dell Decl., Dkt. 3-1). MSHA issued a citation for denial of entry but has been unable to send an inspector to the Fairfield Plant.

On September 25, 2023, DOL filed the instant complaint concurrently with its motion for a preliminary injunction. (Compl., Dkt. 1; Mot. Prelim. Inj., Dkt. 3). DOL seeks a court order pursuant to Rule 65 and 30 U.S.C. § 818 authorizing entry onto the Fairfield Plant, with accompaniment by the U.S. Marshals Service to be paid for by Defendants. (Mot. Prelim. Inj., Dkt. 3, at 9). Although the Court instructed Defendants to file a response to the motion for a preliminary injunction, (Minute Entry, Dkt. 7), Defendants instead filed a motion to dismiss for lack of jurisdiction, for failure to state a claim, and for a more definite statement. (Mot., Dkt. 10). In their motion, Defendants contend that the Court lacks jurisdiction over the complaint because it is not a mine, and that the complaint should instead have been brought by OSHA. (*Id.* at 4). Carson further argues that the ALJ's decision is not binding on this Court because FMSHRC has taken up review of the opinion, and that FMSHRC lacks jurisdiction to do actions like issue Mine IDs. (*Id.* At 5). Carson further argues that he is not the operator of a mine and that the facts stated in DOL's complaint and preliminary injunction motion are not true or unsupported by evidence. (*Id.* at 5–17). Defendants separately filed a counterclaim on the grounds that DOL has not issued Mine IDs for other mines in the area, which DOL moved to dismiss. (Counterclaim, Dkt. 11; Mot. Dismiss, Dkt. 13).

On November 14, 2023, the Court held a hearing on the motion for a preliminary injunction. (Dkt. 17). DOL and O'Dell reaffirmed that they feel unsafe attempting to inspect the Fairfield Plant in light of Carson's threats. Carson argued that he never meant to imply violent

3

threats, but instead would simply have not allowed the MSHA inspectors onto his property or called

local law enforcement to escort them off. He further argued that the Court lacked jurisdiction to

hear the case, and that he had filed a counterclaim to ensure that an Article III court would rule on

whether it had jurisdiction based on whether the Fairfield Plant is a mine.[1]

## II. LEGAL STANDARD

### A. Preliminary Injunction

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is

to be treated as the exception rather than the rule. *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050

(5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to

succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,

that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v.*

*Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden

of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir.

2005).

### B. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter

jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited

jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and

federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court

properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or

constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143

F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on

---

[1] Shortly before the preliminary injunction hearing, Defendants filed objections to parts of the affidavits
included in DOL's motion. (Dkt. 15). Defendants objected to O'Dell's opinion that the ALJ's decision was
binding for purposes of res judicata, but not the admission of the ALJ decision itself. (*Id.* at 2).

the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### C. Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiffs'] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference,

and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.,* 551 U.S. 308, 322 (2007)). "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant,* 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### D. Rule 12(e)

When a "party cannot reasonably prepare a response," the Court may require "a more definite statement of a pleading . . . ." Fed. R. Civ. P 12(e); *Spencer v. August*, No. 1:17-CV-63, 2020 WL 2832078 (E.D. Tex. Apr. 17, 2020), *report and recommendation adopted*, No. 1:17-CV-63, 2020 WL 2820303 (E.D. Tex. May 29, 2020) (noting that "the proper remedy is a motion for a more definite statement under Rule 12(e), or an order allowing the Plaintiff to amend" when a complaint does not put defendants on notice of the wrong that occurred). "A court should only grant a motion for a more definite statement when the complaint is so excessively vague and ambiguous to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Omkar, LLC v. AmGUARD Ins.*, 624 F. Supp. 3d 646, 650 (E.D. La. 2022) (internal quotations omitted).

### III. DISCUSSION

### A. Preliminary Injunction

#### 1. Likelihood of Success on the Merits

The parties' arguments focus on likelihood of success on the merits, and in particular, whether DOL is likely to prevail on its argument that the Fairfield Plant is a mine. DOL contends that the Fairfield Plant is already classified as a mine, engages in mining activities, and was recently determined by an ALJ to be a mine. Carson argues that the Fairfield Plant has transformed into a stone finishing facility, and that DOL lacks jurisdiction to inspect the site. Ultimately, the Court finds that the Fairfield Plant is likely a mine for three reasons: (1) courts should treat ALJ decisions

as conclusive when issuing injunctions for denials of MSHA entry into a mine, and an ALJ has ruled

that the site is a mine; (2) administrative deference counsels in favor of finding that the site is a mine;

and (3) the evidence introduced at the hearing on its own is sufficient to show that the Fairfield

Plant is a mine.

First, the FMSHRC has already ruled that the Fairfield Plant is a surface mine,[2] and the

Mine Act instructs that federal courts should defer to ALJ decisions when authorizing injunctions

that enforce past FMSHRC decisions. Under 30 U.S.C. § 818(b), "In any action instituted under this

section to enforce an order or decision issued by [FMSHRC] after a public hearing . . ., the findings

of [FMSHRC], if supported by substantial evidence on the record considered as a whole, shall be

conclusive." DOL brings this action under 30 U.S.C. § 818(a) following an administrative hearing by

an ALJ that determined the Fairfield Plant is a mine. (Manning Op., Dkt. 1–3). DOL is enforcing

that decision because FMSHRC's determination that the Fairfield Plant is a mine obliges the agency

to conduct biannual inspections and ensure that past safety violations are abated. 30 U.S.C. § 813(a).[3]

The hearing was based on substantial evidence, including a thorough review of testimony from

Carson and MSHA inspectors. (*See* Manning Op, Dkt. 1–3). Accordingly, the Court finds that his

determination of the Fairfield Plant's classification as a mine should be treated as conclusive. 30

U.S.C. § 818(b).

---

[2] Defendants objected to O'Dell's opinion that the ALJ decision was binding, but not the decision itself. Even if O'Dell had objected, the Court finds that the decision would be admissible for the purposes of a preliminary injunction. *See Fed. Savings and Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987) (noting that "a preliminary injunction proceeding is not subject to jury trial procedures" and that courts may rely on affidavits and other hearsay evidence to consider the motion); *see also Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993) ("[A]t the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence.").

[3] In addition, the Mine Act requires that health and safety violations must be abated during a period of time set by DOL. 30 U.S.C. § 814(a). In order to enforce the ALJ's affirmation of health and safety violations, DOL must conduct subsequent inspections to ensure that the violations have been abated.

Even absent specific instruction under the Mine Act to treat FMSHRC findings as "conclusive," the Court would finds it likely to ultimately agree with the ALJ's determination under more general administrative deference. Federal courts review ALJ legal determinations de novo and its factual findings for substantial evidence. *Ramirez-Mejia v. Lynch*, 794 F.3d 485, 489 (5th Cir. 2015). "Under the proper standard of review, this Court is 'highly deferential' to the agency's decision and presumes that the agency action is valid." *Oceana, Inc. v. Ross*, 920 F.3d 855, 863 (D.C. Cir. 2019) (citing *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 415 (1971)). Courts should "affirm the [agency's] factual findings if they are supported by substantial evidence on the record, considered as a whole." *Poly–Am., Inc. v. NLRB*, 260 F.3d 465, 476 (5th Cir. 2001). Under this deferential standard of review, "the ALJ's decision must be upheld if a reasonable person could have found what the ALJ found, even if the appellate court might have reached a different conclusion had the matter been presented to it in the first instance." *DirecTV Holdings, LLC v. Nat'l Lab. Relations Bd.*, 650 F. App'x 846, 850 (5th Cir. 2016) (unpublished) (cleaned up). As the ALJ noted, the question of "whether a facility is subject to Mine Act jurisdiction is factually dependent." (Manning Op., Dkt. 3-3, at 13).[4] Having made the factual finding that milling occurs at the plant, the ALJ properly determined that the Fairfield Plant qualifies as a mine. Because it was based on substantial evidence

---

[4] The sole applicable legal conclusion from the ALJ which could warrant de novo review is the determination that the Fairfield Plant is a mine even if no extraction occurs on the site. Defendants have largely forfeited that argument here because they neither filed it in response to the preliminary injunction or laid out the argument at the hearing. Moreover, while this is not an appeal of the ALJ's order, the Court would affirm this holding even under de novo review under existing D.C. Circuit precedent. *See Sec'y of Labor v. National Cement Co. of Cal. Inc.*, 573 F.3d 788, 795 (D.C. Cir 2009) (Subsection (C) of the Act's definition of "mine" can reach facilities "not located within an extraction area."); *see also Donovan v. Carolina Stalite Co.*, 734 F.2d 1547, 1551-1552 (D.C. Cir. 1984) (The Act "does not require that . . . [structures and facilities used in milling] be owned by a firm that also engages in the extraction of minerals from the ground or that they be located on property where such extraction occurs."). Carson does not appear to have meaningfully contested the fact that milling occurs at the Fairfield Plant, just that milling must be adjacent to an extraction site. Because the Court rejects this argument under D.C. Circuit precedent, it finds little contest that milling—and thus mining—occurs at the Fairfield Plant.

and without legal error, the Court finds it likely that the ALJ reached the correct decision, and therefore likely that the Fairfield Plant was properly characterized as a mine.

No evidence introduced at the preliminary injunction hearing shows that the ALJ's decision was wrong, or that this Court would reach a different conclusion even under de novo review. In particular, Carson has failed to show that the Fairfield Plant is a mine because he did not directly respond to the motion for a preliminary injunction. Instead, Carson chose to focus his arguments—both in briefing and at the hearing—on the notion that the Court lacks jurisdiction. (Minute Entry, Dkt. 17). As a result, only two pieces of evidence introduced by Carson at the hearing speak to the classification of the Fairfield Plant: (1) a request to MSHA to confirm the closure of the Fairfield Plant, and (2) an affidavit from Carson which states, in largely conclusory terms, that the Fairfield Plant no longer engages in mining. (MSHA Request, Dkt. 10-2; Affidavit, Dkt. 10-1).

This evidence are insufficient as a matter of evidence to hold that the Fairfield Plant is no longer a mine. First, the submission of a request to declassify a mine is neither evidence that the mine was actually declassified nor that the site has stopped engaging in mining. It is only evidence that Carson *believes* the Fairfield Plant does not engage in mining. To the contrary, DOL introduced its own history of the mine, showing that it is still classified as "Active." (Mine History, Dkt. 19-1, at 1). As the Fairfield Plant has been subject to mining inspections consistently for the past 25 years, the Court finds it likely that DOL will succeed in showing its status as a mine.

Moreover, evidence within the ALJ's decision, including Carson's own testimony, points to a finding that the Fairfield Plant is a mine. As the ALJ already noted, "Carson also acknowledged that 10 to 15 percent of Cactus Canyon's business comes from 'something that we've mined ourselves.'" (Manning Op., Dkt. 3-3, at 5). The ALJ found that, based on the evidence in the underlying record, "[T]o get the stone to the right size and shape . . ., the Fairland Plant utilizes a slow, deliberate, 'closed circuit system' where the dimension stone is fed into a hopper, crushed, and then oversized

material is screened out so it can be recirculated and 'crushed down,' or 'size reduced,' again." (*Id.* at 6). Based on Carson's own testimony and his assessment of activity at the mine, the ALJ reasoned that this constituted milling under the Mine Act and "squarely fits within" what constitutes a mine under the Mine Act. (*Id.* at 10).

Overall, the Court finds it likely that the Fairfield Plant is properly classified as a mine. (Manning Op., Dkt. 1-3). In addition to the Mine Act's instruction to defer to ALJ decisions, Carson has not shown that the ALJ's description of the evidence was incorrect or why the ALJ's findings are likely to be overturned. Finally, the classification of the Fairfield Plant as a mine accords with Congress's intent "that the definition of a mine under the Mine Act be given the broadest possible interpretation." *Solis v. Timber Savers, Inc.*, 3:10-CV-547-BLW, 2010 WL 5113066, at *3 (D. Idaho Dec. 3, 2010) (citing *Carolina Stalite Co.*, 734 F.2d at 1554). Under the Mine Act's administrative deference and the evidence introduced on the record, the Court finds that it is properly characterized as a mine under the Mine Act.[5]

### 2.  Irreparable Harm, Equities, and Public Interest

The Mine Act expressly authorizes DOL to pursue injunctive relief against an operator who "interferes with, hinders, or delays" MSHA staff in carrying out mining inspections. 30 U.S.C. § 818(a)(1)(B). Because the statute authorizes injunctive relief, DOL need not show further evidence of irreparable harm. *See United States v. Marine Shale Processors*, 81 F.3d 1329, 1359 (5th Cir. 1996); *see also United States v. FDIC*, 881 F.2d 207, 210 (5th Cir. 1989) ("However, if a statutory violation is involved and the statute by necessary and inescapable inference requires injunctive relief, the movant

---

[5] The parties do not seriously contest whether the site affects interstate commerce, which is a necessary component to fall under the Mine Act's regulation. *See D.A.S. Sand & Gravel, Inc. v. Chao*, 386 F.3d 460, 463 (2d Cir. 2004) (noting congressional intent to regulate mines to full extent of Commerce Clause power). Plainly, given Defendants' own declarations that they import and ship stone in and out of Texas, the site falls within Congress's interstate commerce power. (Carson Decl., Dkt. 10-1, at 4).

is not required to prove the injury and public interest factors."). Nor does Carson contest the irreparable harm factor. Therefore, the Court finds that DOL has met its burden on this prong.

Likewise, the balance of the equities and the public interest weigh in DOL's favor. The Mine Act grants a right of entry onto surface mines for the purposes of inspections. 30 U.S.C. § 813(a). Carson cannot lawfully deny entry. *Id.* § 818(a). Accordingly, Carson cannot claim a valid or overriding interest in doing what the law prohibits. *Solis v. Manalapan Min. Co.*, No. 10-115-GFVT, 2010 WL 2197534, at *6 (E.D. Ky. May 27, 2010). As the *Manalapan* court noted,

> Through the Mine Act, Congress charged the Federal Mine Safety and Health Administration with ensuring the health and safety of all miners, providing more effective means and measures for improving the working conditions and practices in the Nation's mines, preventing the death and serious physical harm to the miners, remedying unsafe and unhealthful conditions in the mines, and preventing mine accidents which unduly impeded and burden commerce. *See*, 30 U.S.C. § 802(a)-(f). To comply with these objectives, MSHA must conduct meaningful inspections of the mines.

*Id.*

Because DOL has a statutory obligation to conduct its second biannual inspection to ensure miners' safety at the Fairfield Plant, the Court finds that both the public interest and balance of equities weigh in favor of ensuring a prompt inspection of the site.

### B. Scope of Injunctive Relief

Last, the Court reaches the scope of relief. The Mine Act authorizes district courts to institute a "permanent or temporary injunction, restraining order, or any other appropriate order . . . ." 30 U.S.C. § 818(a)(1). It further notes that the district court shall "have jurisdiction to provide such relief as may be appropriate . . . ." *Id.* § 818(b). DOL asks the Court to issue an injunction authorizing entry onto the Fairfield Plant and to have the U.S. Marshals Service accompany the inspectors at Defendants' expense. (Mot. Prelim. Inj., Dkt. 3, at 6).

Based on Carson's past interactions with MSHA staff, the Court finds that there is a sufficiently credible threat of violence and intimidation to necessitate U.S. Marshals' accompaniment. After initial conversations between Carson and MSHA staff about an inspection, Carson sent a letter threatening that "MHSA [will be] Treated as Trespasser." (Carson Letter, Dkt. 3-2, at 2). The letter instructs MSHA not "to test our resolve in treating the inspector as a trespasser." (*Id.*). It again states, "MSHA Must Not Interact with any Employee @ Fairfield Plant; MSHA will be recorded and treated as a Trespasser @ Fairfield Plant." (*Id.*). These statements constitute credible threats. As O'Dell testified, the phrase "treated as trespassers" is commonly understood to threaten potential violence against trespassers. (O'Dell testimony, Dkt. 17). Although Carson testified that he did not intend to imply physical harm, the Court finds that recipients of the letter would reasonably understand it to convey a violent threat. As a result, MSHA inspectors likely cannot inspect the Fairfield Plant without justifiably fearing for their own safety.[6] Accordingly, the Court determines that accompaniment from the U.S. Marshals is necessary to ensure relief under 30 U.S.C. § 818.[7]

### C. Defendants' Motion to Dismiss and to Exclude

Rather than contest DOL's characterization of the Fairfield Plant as a mine in response to the preliminary injunction motion, Defendants moved to dismiss its complaint and exclude portions of O'Dell's testimony. (Mot. Dismiss, Dkt. 10; Mot. Exclude, Dkt. 15). Defendants bring their motion under both 12(b)(1) and 12(b)(6), although the asserted grounds for dismissal are largely the same. (Mot. Dismiss, Dkt. 10). Overall, the motion argues that DOL lacks jurisdiction to seek

---

[6] O'Dell also testified that Carson has been verbally aggressive with MSHA inspectors in the past, and the Court finds his testimony credible. (Minute Entry, Dkt. 17).
[7] The Court may determine the question of payment at a later stage of litigation or allow DOL to pursue the cost of U.S. Marshals accompaniment as part of any penalty under 30 U.S.C. § 820.

injunctive relief to enter areas that are not mines, and therefore lacks jurisdiction to bring this suit. (*Id.*).

First, the 12(b)(1) argument is misplaced. Whether the Fairfield Plant should be characterized as a mine does not affect the Court's subject-matter jurisdiction to hear DOL's complaint. *See Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover."). The Mine Act, 30 U.S.C. § 818(a), expressly authorizes actions in federal district courts to ensure compliance with MSHA inspections. DOL asserts that the Fairfield Plant is a mine. The subject-matter jurisdiction inquiry is satisfied because DOL has asserted an Article III injury arising under a federal statute that creates a cause of action for DOL. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. § 1345 ("[T]he district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."). Carson confuses DOL's regulatory jurisdiction with district courts' subject-matter jurisdiction.

Defendants assert the same argument in their Rule 12(b)(6) motion, which is the more proper vehicle for dismissal based on the merits of the case. (Mot. Dismiss, Dkt. 10). However, the 12(b)(6) motion fails because it asks the Court to make fact-intensive determinations at the pleading stage. In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (internal quotations omitted). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. 678 (quoting *Twombly*, 550 U.S. at 570).

Instead of viewing factual allegations in DOL's favor, Defendants ask the Court to resolve issues of contested fact in their own favor. For example, Defendants argue, "There is no admissible evidence in the O'Dell Declaration to support all or parts of [the] Complaint" related to assertions that the Fairfield Plant is a mine. (Mot. Dismiss, Dkt. 10, at 3). It then states, "In summary, Cactus Canyon's evidence attached establishes that Fairland Plant has evolved into a unique terrazzo stone finishing facility" and that "no extraction" occurs at the plant. (*Id.* at 4). These contested facts are not in DOL's complaint or attached thereto and are therefore inadmissible as part of a 12(b)(6) motion. *See Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016) ("A district court is limited to considering the contents of the pleadings and the attachments thereto when deciding a motion to dismiss under Rule 12(b)(6)."). Moreover, the evidence is contested by DOL's factual allegations, which state that the Fairfield Plant "is engaged in milling in that it sized dimensional stone material by crushing and screening it." (Compl., Dkt. 1, at 2). The Court accepts these factual allegations as true, as it must in a 12(b)(6) motion. Because DOL's factual allegations plausibly show that the Fairfield Plant is a surface mine, the Court will deny the motion to dismiss.

Next, Defendants seek relief under Rule 12(e) for a more definite statement. (Mot. Dismiss, Dkt. 10, at 16–21). That request is indistinguishable from the 12(b)(6) motion. "A court should only grant a motion for a more definite statement when the complaint is 'so excessively vague and ambiguous to be unintelligible and as to prejudice the defendant seriously in attempting to answer it.'" *Omkar*, 624 F. Supp. 3d at 650 (quoting *Phillips v. ABB Combustion Eng'g, Inc.*, No. 13-594, 2013 WL 3155224, at *2 (E.D. La. June 19, 2013)). DOL's complaint does not approach the level of vagueness or ambiguity required to dismiss under Rule 12(e). Accordingly, the motion for a more definite statement is denied.[8]

---

[8] Defendants also ask the Court to award sanctions under Rule 11. As the Court finds DOL's preliminary injunction to be meritorious, it will not award sanctions against the agency.

Finally, the Court will briefly address Defendants' motion to exclude, (Dkt. 15). Defendants seek to exclude O'Dell's declaration as to two points: (1) that it states the Fairfield Plant is engaged in a mining operation and (2) that the ALJ decision has res judicata effect. As to the first point, O'Dell's declaration is admissible because he is competent to testify whether MSHA has classified the site as a mine, since he is a division manager of MSHA. As to the second point, O'Dell does not state that the decision has res judicata effect. Accordingly, the motion to exclude will be denied.

### D. DOL's Motion to Dismiss Counterclaims

Defendants also bring a counterclaim against DOL, which the agency has moved to dismiss. (Counterclaim, Dkt. 11; Mot. Dismiss, Dkt. 13). In their counterclaim, Defendants ask the Court to issue an injunction ordering DOL to recognize 10 intermittent mines and grant Mine IDs for those mines. (Counterclaim, Dkt. 11, at 3–6).

Defendants bring their claim under the Administrative Procedure Act ("APA") Section 702. (*Id.* (citing 5 U.S.C. § 702)). However, Defendants ask that DOL take action under the Mine Act, which disclaims relief that is otherwise available under the APA. *See* 30 U.S.C. § 956 ("[T]he provisions of sections 551 to 559 and sections 701 to 706 of title 5 shall not apply to the making of any order, notice, or decision made pursuant to this chapter, or to any proceeding for the review thereof."). The Fifth Circuit has already disposed of a related question involving Cactus Canyon, holding that the APA does not apply to decisions made by the FMSHRC. *See Cactus Canyon Quarries, Inc. v. Fed. Mine Safety & Health Rev. Comm'n*, 64 F.4th 662, 666 n3 (5th Cir. 2023) ("[T]he Administrative Procedure Act, 5 U.S.C. 701, et seq., does not apply to [FMSHRC] hearings or to this court's review of [FMSHRC] decisions."). Defendants ask the Court to apply the APA to the

issuance of Mine IDs under 30 U.S.C. § 801–03, which falls under the Mine Act's exemption to the APA. Accordingly, the Court lacks jurisdiction to authorize such relief.[9]

Shortly before this hearing, Defendants filed an amended counterclaim. (Dkt. 16). The amended pleading asserts the same claims as the original counterclaim, but with arguments in response to the motion to dismiss. Some district courts automatically moot a motion to dismiss that pertains to a superseded pleading, *Melson v. Vista World Inc. & Associates*, CIV.A. 12-135, 2012 WL 6002680 (E.D. La. Nov. 30, 2012), while others have adopted a more functional approach to see if the amended complaint materially affects issues raised in the motion to dismiss. *See Davenport v. Rodriguez*, 147 F. Supp. 2d 630, 635 (S.D. Tex. 2001). Although Carson's amended counterclaim does not materially affect the motion to dismiss, this Court has adopted the former approach of automatically mooting motions that no longer pertain to the live pleading. *See Good River Farms, LP v. TXI Operations, LP*, No. 1:17-CV-1117-RP, 2018 WL 1770494, at *3 (W.D. Tex. Apr. 12, 2018); *see also King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Accordingly, the Court must moot the motion to dismiss. Still, subject-matter jurisdiction is nonwaivable, *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012), and the Court lacks jurisdiction regardless of whether DOL refiles a motion to dismiss. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) ("A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.") (internal quotations omitted). Therefore, while the Court will moot the motion to dismiss, it finds that Defendants' counterclaims must be dismissed for lack of jurisdiction.

## IV. CONCLUSION

For the reasons discussed above, **IT IS ORDERED** that:

---

[9] The Court agrees with DOL's remaining argument that Defendants' complaint is not a proper counterclaim under Rule 13. *See* Fed. R. Civ. P. 13(d) ("These rules do not expand the right to assert a counterclaim—or to claim a credit—against the United States or a United States officer or agency.").

DOL's motion for a preliminary injunction, (Dkt. 3), is **GRANTED**. Specifically, the Court **ORDERS** the following:

1. Pursuant to 30 U.S.C. § 813, et seq., DOL and MSHA inspectors are authorized to enter and inspect the Fairfield Plant and Quarries, 7232 County Road 120, Marble Falls, Burnet County, Texas, for the purposes of a safety inspection to occur prior to January 1, 2024.

2. Within seven days of receipt of this order, Defendants Cactus Canyon Quarries, Inc. and Jack Andy Carson shall instruct employees at the Fairfield Plant not to threaten to or actually hinder, interfere with, delay, or otherwise obstruct MSHA or DOL staff inspecting the Fairfield Plant in 2023.

3. Defendants are prohibited from threatening any DOL or MSHA staff related to the second inspection of the Fairfield Plant in 2023, including any statements that threaten to treat MSHA or DOL staff as trespassers.

4. The U.S. Marshals Service is ordered to accompany MSHA or DOL inspectors at the second inspection of the Fairfield Plant in 2023. DOL and MSHA staff may coordinate for a visit of the Fairfield Plant without advance notice to Defendants, pursuant to 30 U.S.C. § 813(a).

**IT IS FURTHER ORDERED** that DOL's motion to dismiss counterclaims, (Dkt. 13), is **MOOT**.

**IT IS FURTHER ORDERED** that Defendant/Counter-Plaintiffs' counterclaims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss, (Dkt. 10), is **DENIED**.

**IT IS FINALLY ORDERED** that Defendants' motion to exclude, (Dkt. 15), is

**DENIED**.

**SIGNED** on November 20, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE